315-771 Tina Soberri v. Bellos Family Restaurant Nelson, you may proceed. Thank you, Judge. Your Honors, my name is Bill Porter. May it please the Court and the Council? There you are. This is before the Court because Judge Heddle down in South County reversed the commission on a finding in a 19B petition that dealt with a low back condition and a forecast and award for future medical dealing with a low back surgery. The commission decided this in a reversal of the arbitrator's decision. What I'd like to address is the basis for the commission decision very briefly. And it does not deal with any hired experts such as Dr. Player. It does not deal with Dr. Lorenz. It focuses in the commission award decision dealt with Dr. Inseon, the petitioner, and her testimony that was put forth as a basis for why she should be compensated because I got a low back problem and also it addresses the lack of credibility on the part of Dr. Lorenz's opinions. And without belaboring it, the commission decision itself nails it. It goes, the judge, excuse me, the two commissioners went through the record and strictly focused in on Dr. Inseon's eight year period where he treated this person for low back problems including medication, including a TENS unit. When I specifically asked the petitioner on cross-examination at the hearing on arbitration about these matters, she says, well, gee whiz, that was for generalized arthritic changes or arthritic problems. I don't even know what a TENS unit is. When you go through what is cited in the record and in the brief, you can see that Dr. Inseon talked with her not only about why she was getting medication over that eight year period up until one month before the accident. He discussed with her on several occasions the fact that the TENS unit really wasn't providing her a lot of relief. So it was not credible that she did not know what a TENS unit was. It was not credible that she had no low back problems before this event. Then, in regard to Dr. Lorenz's opinions, specifically on direct, the last question essentially that was put to him was, in regard to his opinion, why do you believe that the surgical intervention that you recommended as a possibility, do you believe that that would be related to the accident? Answer, yes. And this is at page 234 of the transcript. Why is that? Because the patient had no pain and no treatment in regard to her lower back. And he went on and said, the fall caused this problem on December 6, 2010. On cross-examination in the following few pages, pages 235 of the record, I went into what did he know and what is the basis for his opinion? And he said flat out on page 235 of the record, I think that this accident caused, not aggravated, caused her problem based strictly on history. I take her at her word. And then I inventory what he looked at. He looked at only his own records and interviewed this woman. And just like in arbitration. So his opinion was not based on the whole history of the pre-existing problems? Correct. Not even in a hypothetical. It was, she had, to paraphrase, a pristine health condition before this fall down on December 6, 2010. As he said, she didn't have any pain or any treatment regarding the low back. The basis for his opinion is incomplete on a good day. So when we went through the review process, the emphasis, and the commission caught it, is this. She had a significant low back problem. And this fall down on December 6, 2010 was inconsequential. And she overreached. Then what did Judge Heddle do? He essentially did what you're not supposed to do. He says, I just disagree. He recited everything that the commission put in their record. And then he went on to talk about Dr. Renz and Dr. Player. Dr. Player's opinions played no role whatsoever in the commission decision. His name doesn't even really appear in there. It's Dr. Inseong. And the lack of credibility on the petitioner's part. Again, Dr. Lorenz, his opinions are basically void of any support when you look at the records from the treating doctor. At the end of the day, it's not what Judge Heddle would like. It's not what I would like. It's not a personal opinion that you could put in here. It is a question, did he follow the standard of review for a work comp decision by the commission? So you're saying he basically substituted his judgment for that of the commission? It's the way the record reads. Yes. But Player's opinion supports the commission's decision, does it not? No. It doesn't? No. The commission says she failed to prove causal connection, didn't it? What did the commission say? Player's opinions deal with a sprain of the low back and then a sprain of the cervical spine. And he does not agree that there should be a surgery. That's not the point. What he says is the 122610 falling incident caused a soft tissue lumbar strain that did not aggravate the subject's chronic and preexisting lumbar spine degenerative condition. That supports the commission's decision to deny her benefit, doesn't it? The commission, yes. I'm not the arbitrator. I mean, for heaven's sake. And we're required to look at any evidence in the record that supports the commission's decision whether they relied on it or not, aren't we? True. He further says there's no causal relationship between the 056 annual care documented on 12411 to the lumbar spine MRI with the 122610 falling incident. I mean, this guy makes your case for you. He does, but- As they say in the NFL, upon further review, do you want to throw out Player's opinion? I don't, but I want to say that. The notion is on the part of the petitioner that we should ignore him or adopt his opinions. I'll adopt them. But in regard to him being a higher gun and not knowing what was going on here, yes. But the arguments being made by the petitioner that let's use Dr. Laurent, excuse me, Dr. Player's opinions on the argument that there's aggravation of a preexisting condition. And that must be what the commission decided. Well, Player didn't say there was aggravation of a preexisting condition. He opined that she reached MMI on January the 4th, 2011, and that she required no further treatment after that date. He goes on to say that her hospitalization on January 17th was not the result of, related to, or caused by, or aggravated by the 122610 falling incident. And I'm reading your quotes now. Nothing that the claimant reported to the emergency room personnel that her symptoms after that fall had initially improved. Noting that he noted that she reportedly improved. This guy made your case. And the commission didn't even cite it. That's why I focused in on Dr. Nsiang's records. So in regard to the manifest way to the evidence supporting what the commission did, they don't mention Player. They jump right into what Dr. Nsiang said, and then use it as a means of discrediting Lorenz. Consequently, I don't believe, if you read the commission decision, they mention Dr. Player at all. But I agree, it's supportive of the argument I make. But when I argue that the commission decision is not contrary to the manifest way to the evidence, I have to go over it. We have to look at all the evidence. And the other problem we have here, too, and I'm going to ask your opponent about it, is this woman, you're right, seemed to contend during argument that she was just in great health. Except they introduced medical records going back to 2008. I guess this event occurred on December 26, 2010, January 30th of 08. And these are Eichen's records. He's prescribing painkillers, June 27th, November 19th of 08. He notes that, gives her some more paracroket refills. February 2009 is really interesting. He makes a notation in the medical records, he's recommending that the claimant use a TENS unit and continue taking paracrot to control her low back pain. This is a woman who had no back pain before December 26, 2010. And that is why I believe that the commission went with his records and said, this woman has no credibility. And again, Judge Heddle didn't even address those records. So in arguing- We don't care with Judge Heddle. Okay. We just worry about whether the commission's decision is against the manifest way of the evidence or not. I think- We'll take care of Judge Heddle in the judgment line. But in regard to that, our position is that the circuit court should now reverse the commission. Thank you, counsel. Counsel, you may respond. Jennifer Kiesletter on behalf of Tina Soberry. And I'm here to ask that the decision of the circuit court here be affirmed so essentially that the commission's decision be reversed. You really think the commission's decision is against the manifest way of the evidence in this record? Of course. Based on Flaher? Based on her not exactly being totally forthcoming about her prior medical treatments? And there are three other two of those. I don't know if you would have agreed with me prior to this level, but the commission's decision doesn't rely on Flaher here. And there's a difference. I mean, the commission's decision here, Dr. Flaher admitted there was a causal connection for a short period of time. I mean, Dr. Flaher said she had a cervical strain. She had a lumbar strain. Reads MMI January the 4th. Right, but the commission's decision denies all benefits. It doesn't recognize that there was ever a causal connection. Did you want benefits up until the 4th? On the neck, yes. I mean, there's no indication. Four days worth? There's, well, it's a couple weeks worth. There's no indication in the records that the commission here even considered the cervical injury. But have you asked anywhere in your briefs that she be given this for up to the 4th? In the briefs, in the briefs, yes. The very last section of the argument addresses whose burden it was regarding the cervical spine. And I indicate in the briefs that the, and I'll show you where mine starts. He indicated, by the way, as I recall, when he examined her, in his opinion, let me see if I can find it. Soft tissue lumbar strain did not aggravate the subject chronic and pre-existing lumbar spine condition. No causal connection between the annual tear documented in the lumbar spine MRI with the falling. Also indicated chronic ingrowth of tissue, which was consistent with degenerative disc disease caused by rheumatoid arthritis. Reached MMI on January 4th and required no further treatment after that day. The hospitalization was not related to, pardon me, was not the, and this is his quote. Result of related to, caused by, or aggravated by the 12-26-10 falling incident. And that's the entire hospitalization from January 12th to January 17th. If you look at the actual notes, though, the history from the hospitalization, your honor, the second under impression, and I believe this is, it's actually page eight of not my brief, but opposing counsel's brief, he cites the actual impression in there, and it talks about the rheumatoid arthritis, that it had been well controlled on medication. And that her aches and pains have been aggravated by this recent fall, so they try, we're trying other medication, and that is during the hospitalization. I don't necessarily, while I agree that Dr. Player's opinion does not support the need for surgery, and that I would rather that the commission adopt Dr. Lorenz's opinion here, I don't necessarily agree that the current commission decision is, that Dr. Player's opinion is in line with it, because- What do you, continue, that they're somehow responsible for the treatment of her cervical spine? Yes. Well, wait a minute, Player's opinion says that the January 17th hospitalization was related to the claim of cervical spine. It was of the opinion that she was not, did not require treatment for her cervical spine after reaching MMI on January the 4th, 2011. He then goes on, and it says, she had a cervical sprain. The accident neither caused nor aggravated the claimant's pre-existing cervical spine degenerative condition. That's his quote. That's her cervical spine, what else have we got that she didn't get benefits for? She lost the lumbar spine, she lost the cervical spine, and Player covered them both. And she's getting treatments here, that's why I couldn't believe this, as I was reading this. She testifies, ever having medical treatment for low back pain, when her own treating physician's records reflect that she was in there for low back pain a year before this accident. But where does she say she didn't? She says, it's my understanding that it was related to arthritis, and if you look at the records, it is related to arthritis. April 9th of 2010, low back, chronic low back pain, the Percocet works, and meanwhile she is on her other arthritis medication that is given by her other doctor, which is what she testified to. I had a doctor in Peoria, my Percocet was what Dr. Inseong was refilling every month, because I needed it refilled every month. That is not in the medical records, I don't know if that's why she was going through him to get it refilled, but in the medical records, it does consistently show that he is relating her low back pain to arthritis. She's under the understanding, and as he documents in the records, that the Percocet is for the arthritis. And that's what she's testifying to. She doesn't say, I've never had low back pain. She does describe how this low back pain is different, but she says, yes, I have arthritis. And yes, I'm getting Percocet. And then the medical records also support here that the Percocet was controlling her pain, which is why I believe the manifesto of the evidence supports a different conclusion here, because if you look at the medical records and the commission's decision, and as I pointed out in the circuit court argument, the part of the commission's decision, the evidence shows petitioner's prior low back condition was significant, and that she had extensive treatment over a period of several years for her low back. Being controlled low back pain and getting Percocet every month? TENS units? How is that significant? And there is an indication that she had a TENS unit and she didn't know what it was, but it's so significant that there's no evidence that she was sent for an MRI until after this fall. There's no indication here that she had any disc problems. All of the medical records support that she had low back pain, which the doctor linked to arthritis, which is what she testified to. That's why there's no support here that really is in line with the commission's decision, including player's opinion, because player's opinion basically says she didn't seek treatment between December 26th and January 4th for this, so something must have happened. He says a little more than that. Well, he says he thought she had a strain, but he indicates that something must have happened, suggesting that something must have happened. Well, she had a soft tissue strain. We know that. She had a soft tissue strain from the fall that totally resolved, according to player, by January 4th. Do we know that, though, under the current commission decision? I mean, do they go on to say this wasn't tried for permanency, but they're just basically denying the whole benefits? They're not accepting that she had a neck strain and a lumbar strain, which is why I don't think they're adopting player's decision. I think they're saying she had a degenerative condition and a soft tissue strain that had nothing to do with that degenerative condition, and that's exactly what player said. He denied her all benefits for this injury, saying, you know, you had a soft tissue strain. You were back to work. She'd been back to work, MMI, January 4th. Did not require treatment after January 4th. Not the result of, related to, caused by, or aggravated by her falling incident. Those are the conditions you want recovery for. You want recovery for her lumbar spine and her cervical spine, right? That is correct. He says, I'll try again, was not the result of, related to, caused by, or aggravated by the 12-26-10 falling incident. Now, your opponent seems to agree with you that player's testimony was not a significant part or perhaps not a part at all of the commission's decision. But let me ask you this question. We reviewed the entire record. If we find, hypothetically, the commission is right, got it right, but for the wrong reasons, what do we do with that? Well, but did they get it right in denying all benefits? I mean, I guess, you know, part of it is, I think the manifest way to the evidence does not support player's decision, even if you were to adopt player. But part of it is, the commission really, in weighing the evidence, there were two routes that you could really go here. You know, do we believe, Dr. Player, that this was just a soft-tissue strain to her low back and her neck? Except that wouldn't have been a denial of all benefits. I mean, it may have been a minimal case, but there's still an issue whether those strains were worth anything or she was entitled to anything for those couple of weeks. So that doesn't, the way I read this, seem to be what the commission's saying. They don't seem to be adopting Dr. Player's decision because he agrees with a causal connection but to a neck and a low back strain. If you read the commission's decision, they don't even talk about the neck. I don't think Dr. Player says her present condition of ill-being is causally related to her fall. He doesn't say that. He said she had a soft-tissue injury. This woman is not suing for a soft-tissue injury. She's suing for a C4-5, C5-6 bulging and neck pain, a C4-5 annual tear with central disc herniation at the azle back. That's what she's suing for. Dr. Player says it has nothing to do with it. That's degenerative. And it was caused by degenerative. And the commission says that after having considered the entire record, hereby reverses the arbitrator's decision and finds that the petitioner failed to prove that her present condition is causally related to the fall she sustained on December 26, 2017. Based on the threshold finding, compensation is denied. And then they went in to say they didn't believe her either. They focused on that. Said she denied having any back pain at all, whatever the source was. And yet they had tons of records saying she did. This is exactly what Dr. Player says. The mechanism of injury involved the subjects falling onto the ice on her buttocks, which indicates axial compression, which was the only trauma that affected the cervical spine. Dr. Player, and this is indicated in the commission dissent, believes that the mechanism of injury can cause the trauma to petitioner's cervical spine as a result of the axial compression, which the dissent found persuasive. I mean, the only evidence here is that... Let's go a little further. You can't give half a story. He then goes on. This is his May 18, 2011 evaluation report. He goes on to say, quote, 122610 falling incident caused a soft tissue lumbar sprain but did not aggravate the subject's chronic and pre-existing lumbar spine degenerative condition. He goes on to say, quote, no causal relationship between... Am I wrong or am I not reading it correctly? No causal connection between the L5, L6 annual tear demonstrated on the 12411 lumbar spine MRI with the 122610 falling incident. And then goes on to do exactly the same thing for the cervical spine. And I think the reason that I don't believe that the commission is essentially adopting Dr. Player here is because what you have just indicated is not what the commission is saying. He's accepting that there's a causal connection. He just says it ends as of January 4th. Not to the surgery or to the disc. He's not saying there's a causal connection between an L4-5, L5-6 spondylosis with bulging discs or an L4-5 annual tear. He never said that. He said she had a soft tissue injury. That's a different injury. Right, but the commission doesn't say that she has a soft tissue injury. The commission failed to prove a causal connection with her present condition of ill-being. Her present condition of ill-being is C4-5, C5-6, and L4-5. And if the commission had gone on to deny prospective medical treatment on that basis, which they denied all benefits, so they obviously did, I would understand it. But the question becomes why didn't they address whether any benefits should have been awarded for a lumbar and cervical strain if they are in fact adopting Player here? I mean, I don't think that the commission is adopting Player. I think they're going down a completely different line with the evidence that isn't supported. If they adopted Player, why wouldn't they just say prospective medical is denied, TTD is either not awarded or cut off at a certain period, and all she had was a neck strain and a low back strain? But they don't say that. And that is why the decisions against the manifest weight of the evidence because I don't think what the commission does say here is supported by the evidence. Thank you. Thank you, counsel. Very briefly, I think the court understands this case. On the issue of what Dr. Player's opinions amount to, a sprain strain, the woman, the record shows, lost no time from work from the date of the accident through year end. I will add and emphasize, if you look in the record, you will see the first off work slip comes on January 6th, the day she goes off to the hospital for treatment that Dr. Player said has nothing to do with what this case is about. Again, this was a 19B petition, as the court pointed out, dealing with a demand for payment of a lot of temporary total disability and a surgery. And the commission, I think, got it right. Thank you. The motion is a matter of taking under advisement and a written disposition shall issue before the stand and brief recess.